No. 25-1323

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Levi Chin, on behalf of themselves, and all others similarly situated and Teresa
Preciado, on behalf of themselves, and all others similarly situated,
*Plaintiffs - Appellees*,

v.

Evergreen Freedom Foundation,
*Defendant - Appellant.*

On Appeal from the United States District Court for the Central District of California, Civil Action No. 5:24-cv-01473-AH-SHK

**OPENING BRIEF OF EVERGREEN FREEDOM FOUNDATION**

PHILLIP J. ESKENAZI
ALEX E. SPJUTE
BAKER & HOSTETLER LLP
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
(310) 820-8800
peskenazi@bakerlaw.com

*Counsel for Appellant*
EVERGREEN FREEDOM
FOUNDATION

## DISCLOSURE STATEMENT

Pursuant to Fed. R. App. Proc. 26.1(a), Appellant Evergreen Freedom Foundation hereby states it has no parent corporation and no publicly held corporation owns 10% or more of Appellant Evergreen Freedom Foundation.

Dated: July 14, 2025                    Respectfully submitted,

                                        */s/ Phillip J. Eskenazi*
                                        PHILLIP J. ESKENAZI
                                        ALEX E. SPJUTE
                                        BAKER & HOSTETLER LLP
                                        1900 Avenue of the Stars, Suite 2700
                                        Los Angeles, CA 90067-4301
                                        (310) 820-8800
                                        peskenazi@bakerlaw.com

                                        *Counsel for Appellant*
                                        EVERGREEN FREEDOM
                                        FOUNDATION

## **<u>TABLE OF CONTENTS</u>**

JURISDICTIONAL STATEMENT ..................................................... 1

STATEMENT OF ISSUES ................................................................ 2

STATEMENT OF THE CASE ........................................................... 3

SUMMARY OF ARGUMENT ........................................................... 7

ARGUMENT ...................................................................................... 9

    I.    Appellees Lack Article III Standing ......................................... 9

        A.  The District Court Lacked Subject Matter Jurisdiction Because Appellees Failed to Allege a Concrete and Particularized Injury In Fact. .......................................... 11

    II.    The District Court Lacked Subject Matter Jurisdiction Because Appellees Cannot Satisfy the $75,000 Amount-In-Controversy Requirement Under 28 U.S.C. § 1332(a)................................ 19

    III.   The District Court Erred in Not Striking the Complaint under California's Anti-SLAPP Statute ........................................... 23

        A.  The Foundation Prevailed on the First Prong of the Anti-SLAPP Motion Standard. ................................................ 24

        B.  The District Court Erred in Holding Appellees Demonstrated a Probability of Prevailing on the Merits of Their Claim. ... 24

           1.  California's Anti-Spam Email statute is limited to commercial emails, which the Foundation's email is not. ....................................................................... 25

2.  No reasonable consumer could find the Foundation's April 25, 2024 email misleading...............................33

CONCLUSION ................................................................ 42

CERTIFICATE OF SERVICE ......................................... 44

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baton v. Ledger SAS*,
   740 F. Supp. 3d 847 (N.D. Cal. 2024)...............................................13

*Batzel v. Smith*,
   333 F.3d 1018 (9th Cir. 2003) .............................................................2

*Beyond Systems, Inc. v. Kraft Foods, Inc.*,
   972 F. Supp. 2d 748 (D. Md. 2013), *aff'd*, 777 F.3d 712 (4th Cir.
   2015) ..................................................................................................16

*Blanchard v. Fluent LLC*,
   No. 17-04497, 2018 WL 4373099 (N.D. Cal. Sept. 13, 2018).........19

*Bolger v. Youngs Drug Products Corp.*,
   463 U.S. 60 (1983)............................................................................31

*Bontrager v. Showmark Media LLC*,
   2014 WL 12600201 (C.D. Cal. June 20, 2014).................................37

*Central Hudson Gas & Elec. v. Public Serv. Comm'n*,
   447 U.S. 557 (1980)..........................................................................31

*Cherny v. Emigrant Bank*,
   604 F. Supp. 2d 605 (S.D.N.Y. 2009) ..............................................14

*Coal. of Concerned Cmtys., Inc. v. City of Los Angeles*,
   34 Cal. 4th 733 (2004) ......................................................................26

*DC Comics v. Pac. Pictures Corp.*,
   706 F.3d 1009 (9th Cir. 2013) .............................................................2

*Doe v. Gangland Productions, Inc.*,
   730 F.3d 946 (9th Cir. 2013) .......................................................23, 24

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr.
   Trades Council*,
   485 U.S. 568 (1988)..........................................................................31

*Gibson v. Chrysler Corp.*,
  261 F.3d 927 (9th Cir. 2001) ..........................................................19, 20

*Gordon v. Virtumondo, Inc.*,
  575 F.3d 1040 (9th Cir. 2009) .......................................13, 14, 15, 38

*Gravquick A/S v. Trimble Navigation Int'l Ltd.*,
  323 F.3d 1219 (9th Cir. 2003) .................................................................39

*Greenberg v. Digital Media Solutions LLC*,
  No. 19-CV-00355-VC, 2019 WL 1986758 (N.D. Cal. May 1,
  2019) ..................................................................................................19

*Hameid v. Nat'l Fire Ins. Of Hartford*,
  31 Cal. 4th 16 (2003) ..........................................................................26

*Henderson ex rel. Henderson v. Shinseki*,
  562 US 428 (2011).........................................................................9, 10

*Hendricks v. Bank of Am.*,
  408 F.3d 1127 (9th Cir. 2005) ...........................................................1, 10

*Hilton v. Hallmark Cards*,
  559 F.3d 894 (9th Cir. 2010) ...............................................................2

*Hypertouch Inc. v. ValueClick Inc.*,
  192 Cal. App. 4th 805 (2011) ......................................34, 35, 36, 37

*Hypertouch*: *Asis Internet Servs. v. Subscriberbase Inc.*,
  2010 WL 1267763 (N.D. Cal. Apr. 1, 2010).....................................35

*Jackson v. Loews Hotels Inc.*
  No. ED CV 18-827-DMG, 2019 WL 6721637 (C.D. Cal. July 24,
  2019) ..................................................................................................13

*Janus v. Am. Fed'n of State, Cnty., and Mun. Emps., Council 31*,
  585 U.S. 878 (2018).........................................................................3, 4

*Jodan-Benel v. Universal City Studios, Inc.*,
  859 F.3d 1184 (9th Cir. 2017) .........................................................2, 23

*Kanter v. Warner-Lambert Co.*,
    52 F. Supp. 2d 1126 (N.D. Cal. 1999), *aff'd*, 265 F.3d 853 (9th Cir.
    2001) ...................................................................................................20

*Kasky v. Nike, Inc.*,
    27 Cal. 4th 939 (2002) ..............................................................*passim*

*Kleffman v. Vonage Holdings Corp.*,
    551 F.3d 847 (9th Cir. 2008) ...............................................38, 41

*Klein v. Chevron U.S.A., Inc.*,
    202 Cal. App. 4th 1342 (2012) ..................................................16

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011) ..................................................................16

*Lazar v. Superior Court*,
    12 Cal. 4th 631 (1996) ..................................................................12

*Lowery v. Rhapsody Int'l, Inc.*,
    75 F.4th 985 (9th Cir. 2023) ......................................................21

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)........................................................................10

*Makaeff v. Trump University, LLC*,
    715 F.3d 254 (9th Cir. 2013) ...............................23, 24, 25, 42

*Marijanovic v. Gray, York & Duffy*,
    137 Cal. App. 4th 1262 (2006) ..................................................23

*Meredith v. Oregon*,
    321 F.3d 807 (9th Cir. 2003) ................................................2, 10

*Naffe v. Frey*,
    789 F.3d 1030 (9th Cir. 2015) (abrogated on other grounds by
    *Garnier v. O'Connor-Ratcliff,* --- F.4th ---, 2025 WL 1387929 (9th
    Cir., May 14, 2025)) ......................................................................22

*Navellier v. Sletten*,
    29 Cal. 4th 82 (2002) ....................................................................23

*One Fair Wage, Inc. v. Darden Restaurants Inc.*,
    Case No. 21-16691, 2023 WL 2445690 (9th Cir. March 10, 2023) ...................1

*Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*,
    802 F.2d 362 (9th Cir. 1986) ...........................................................21

*People v. Farell*,
    28 Cal. 4th 381 (2002) ...................................................................26

*Peters v. St. Joseph Servs. Corp.*,
    74 F. Supp. 3d 847 (S.D. Tex. 2015).................................................13

*Prison Legal News v. Ryan*,
    39 F.4th 1121 (9th Cir. 2022) .........................................................32

*Reid v. Johnson*,
    780 F.3d 952 (9th Cir. 2015) ..................................................8, 16, 19

*Rice v. Fox Broad. Co.*,
    330 F.3d 1170 (9th Cir. 2003) (overruled on other grounds by
    *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952
    F.3d 1051 (9th Cir. 2020)) .............................................................29

*Robins v. Spokeo Inc.*,
    867 F.3d 1108 (9th Cir. 2017) ....................................................11, 12

*Rosolowski v. Guthy-Renker LLC*,
    230 Cal. App. 4th 1403 (2014) ..................................................*passim*

*SEIU Healthcare 775NW v. State of Washington Department of Social
    and Health Services*,
    193 Wash. App. 377 (2016).............................................................29

*Soriano v. Lending Tree, LCC*,
    No. 17-07078, 2018 WL 2317945 (N.D. Cal. May 22, 2018) ............19

*Southcentral Found. v. Alaska Native Tribal Health Consortium*,
    983 F.3d 411 (9th Cir. 2020) ..........................................................11

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016), *as revised* (May 24, 2016) .......................10, 11

*Stasi v. Inmediata Health Grp. Corp.*,
    501 F. Supp. 3d 898 (S.D. Cal. 2020)...................................................13

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998), *abrogated on other grounds* by *Riley v. Bondi*,
    606 U.S. ---, --- S. Ct. ---, 2025 WL 1758502 (June 26, 2025).........10

*Tagged, Inc. v. Doe 1 through 10*,
    2010 WL 370331 (N.D. Cal. Jan. 25, 2010)...........................................37

*Thornhill v. Alabama*,
    310 U.S. 88 (1940)...................................................................................24

*TrafficSchool.com, Inc. v. Edriver, Inc.*,
    653 F.3d 820 (9th Cir. 2011) ...............................................................16

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)..................................................................11, 12, 14

*United States v. Playboy Entertainment Group, Inc.*,
    529 U.S. 803 (2000)................................................................................31

*Van Patten v. Vertical Fitness Grp. LLC*,
    847 F.3d 1037 (9th Cir. 2017) ..............................................................17

*Wagner v. Spire Vision LLC*,
    2015 WL 876514 (N.D. Cal. Feb. 27, 2015) (noting *Rosolowski* is
    one of only two California Appellate Court decisions to address
    Section 17295.5(a)(3))............................................................................34

*Wakefield v. ViSalus, Inc.*,
    51 F.4th 1109 (9th Cir. 2022) ..............................................................18

**Statutes**

15 U.S.C. § 7707(b)(1)..................................................................8, 14, 18

28 U.S.C. § 1291..............................................................................................2

28 U.S.C. § 1332........................................................................................1, 5

28 U.S.C. § 1332(a) ......................................................................3, 8, 19, 22

28 U.S.C. § 2107(a) .......................................................................................2

viii

Controlling the Assault of Non-Solicited Pornography And Marketing
(CAN-SPAM) Act of 2003, 15 U.S.C. § 7701, *et seq.*......................13, 15, 18, 38

Cal. Civ. Proc. Code § 425.16 ...............................................................6, 24

Cal. Bus. & Prof. Code §§ 17204, 17535 ...............................................16

California's Anti-Spam Email Act, Cal. Bus. & Prof. Code § 17529.5 ..........*passim*

California's Unfair Competition Law, Cal. Bus. & Prof. Code §§
17200 *et seq.* .................................................................................16, 26

Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).........................19, 20

Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et
seq. ..................................................................................................16

False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et
seq.* ..................................................................................................16

Federal Telephone Consumer Protection Act..............................................17, 18, 19

Lanham Act...............................................................................................16

**Other Authorities**

First Amendment.......................................................................................*passim*

Black's Law Dictionary (10th ed. 2014) p. 325 ......................................27

California Constitution..............................................................................31

Cir. R. 28.1-1............................................................................................1

Cir. R. 29-2(c)(2) .....................................................................................1

Cir. R. 29-2(c)(3) .....................................................................................1

Cir. R. 32-1...............................................................................................1

Cir. R. 32-2(a) ..........................................................................................1

Cir. R. 32-2(b) ..........................................................................................1

Cir. R. 32-4...............................................................................................1

Fed. R. App. Proc. 4(a)(1)(A) .......................................................2

Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6) ..................................6, 7

Fed. R. Civ. Proc. 12(h)(3) .........................................................9

Fed. R. Civ. Proc. 23 ................................................................21

Fed. R. App. Proc. 29(a)(5) ........................................................1

Fed. R. App. Proc. 32 ................................................................1

Oxford English Reference Dictionary (2d ed. 1996) p. 290 ...................27

U.S. Constitution Article III..............................................*passim*

## JURISDICTIONAL STATEMENT

The complaint in this action asserted diversity jurisdiction under 28 U.S.C. § 1332.

This Court has jurisdiction to address the threshold question of subject matter jurisdiction, including Appellees' Article III standing. *One Fair Wage, Inc. v. Darden Restaurants Inc.*, Case No. 21-16691, 2023 WL 2445690 (9th Cir. March 10, 2023) ("…we must satisfy ourselves of our Article III jurisdiction to hear the appeal. That question, in turn, requires us to be satisfied that the district court had Article III jurisdiction over the case") (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), *abrogated on other grounds* by *Riley v. Bondi*, 606 U.S. ---, --- S. Ct. ---, 2025 WL 1758502 (June 26, 2025) ("On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes.")).

This Court also has pendent jurisdiction to determine Appellees' Article III standing because resolving that threshold question "is necessary to ensure meaningful review" of the district court's denial of the Appellant Evergreen Freedom Foundation's ("Appellant" or "Foundation") anti-SLAPP Motion to Strike. *See Hendricks v. Bank of Am.*, 408 F.3d 1127, 1134-35 (9th Cir. 2005) ("[W]e have recognized that it 'is necessary' to decide subject matter jurisdiction defenses 'to ensure meaningful review' of a district court's interlocutory rulings because if appellate

1

courts lack jurisdiction, they cannot review the merits of these properly appealed rulings"); *see also Meredith v. Oregon*, 321 F.3d 807, 815-16 (9th Cir. 2003) (confirming subject matter jurisdiction is "necessary to ensure meaningful review" of the district court's interlocutory rulings).

In the alternative, this Court has jurisdiction under 28 U.S.C. § 1291, notwithstanding the absence of a final judgment, because the Appellant appeals the denial of a Motion to Strike under California's anti-SLAPP statute, a recognized claim of immunity under the collateral order doctrine. *See, e.g., Jodan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1188-89 (9th Cir. 2017) (anti-SLAPP denial is appealable under collateral order doctrine); *DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1012-16 (9th Cir. 2013) (same); *Hilton v. Hallmark Cards*, 559 F.3d 894, 901-02 (9th Cir. 2010) (same); *Batzel v. Smith*, 333 F.3d 1018, 1024-26 (9th Cir. 2003) (abrogated on other grounds by statute).

Appellant timely appealed on February 28, 2025. *See* 28 U.S.C. § 2107(a); Fed. R. App. Proc. 4(a)(1)(A).

## **STATEMENT OF ISSUES**

**I.** Whether Appellees lack Article III standing where they rely upon the receipt of an email under California's Anti-Spam Email Act, Cal. Bus. & Prof. Code § 17529.5(a)(3), yet otherwise fail to allege a concrete and particularized injury in fact.

2

**II.**     Whether the district court lacked subject matter jurisdiction where Appellees cannot satisfy the $75,000 amount-in-controversy requirement of 28 U.S.C. § 1332(a).

**III.**     Whether the district court erred by denying the nonprofit Foundation's Special anti-SLAPP Motion to Dismiss where the Foundation sent an email squarely within its First Amendment right to free speech and Appellees could not show a "reasonable probability" of success on the merits of their claimed violation of California's Anti-Spam Email Act, Cal. Bus. & Prof. Code § 17529.5(a)(3), because that email was neither a "commercial e-mail advertisement" nor materially misleading to a consumer "acting reasonably under the circumstances."

## STATEMENT OF THE CASE

Appellant, Evergreen Freedom Foundation (the "Foundation"), is a nonprofit organization that advocates for public employees' First Amendment rights regarding union membership, especially following the Supreme Court's 2018 decision in *Janus v. AFSCME*.[1] ER-199.  Consistent with that mission, the Foundation emailed several public employees who are members of Teamsters Local 1932 asking about their experience as members of that union and informing them of their constitutional

---

[1] *Janus v. Am. Fed'n of State, Cnty., and Mun. Emps., Council 31,* 585 U.S. 878 (2018).

rights related to union membership as clarified by *Janus*. ER-199. The full text of that email is set forth below.

Appellees are public employees of San Bernadino County, California, and members of the Teamsters Local 1932 Union ("Teamsters"). ER-203. The Teamsters represents approximately 14,000 public employees in California. ER-203.

The April 25, 2024 email from the Foundation at issue here (the "Email") has a "header" indicating it is "From: Orlando Ibarra <orlando@opttouttoday.com>". ER-204, 213. The immediately following line states: "Subject: Your Experience with Teamsters – Your Voice Matters." *Id*. The body of the email reads as follows:

> Dear [Recipient],
>
> I'll be quick and to the point.
>
> The reason why I am reaching out is because several former Teamsters 1932 members have reached out to us asking for help to stop paying dues into what they say is a union that does not really represent them. While they just might be disgruntled members, it is important to highlight that they chose to exercise their constitutional right to do so.
>
> We here at OptOutToday.com are dedicated to informing and empowering those that are disenfranchised by their union. When a union, or any service for that matter, does not benefit you, why should you then have to cough up your hard-earned paycheck to them? Thanks to the Janus decision in 2018, you no longer have to and you have the right to stay in or leave your public sector union.
>
> We are genuinely interested in hearing your side of the story. So, to those that have decided to opt out - what made you leave? Are there things that Teamsters could have done better? Ideally, what are the top

4

2 things you would like to see change. On the flip side, to those that are still full dues paying members - why do you think some of your coworkers have left? Are you aware of your right to opt out of dues and save you money? What are somethings that Teamsters 1932 has done well?

If you're open to sharing your thoughts, we'd love to hear from you. Your feedback is not only important to us but could also be pivotal for many of your peers contemplating similar decisions.

Please feel free to reach out to us at your convenience or visit OptOut-Today.com to know how you can opt out and start saving hundreds per year.

Best,
Orlando

ER-213-214.

Notably, the Email makes no offer for the sale, purchase, or lease of any goods or services, evidencing no financial motivation nor pecuniary or financial interest by the Foundation in any contemplated transaction. The Email merely inquires about the recipient's experience—good or bad—regarding their union membership, and offers a link to a free website where additional information, including a free opt-out form letter, is available. ER-213-214; *see also* ER-199-200. Nor does the Complaint allege otherwise. ER-220-221.

On July 15, 2024, Appellees filed a putative class action Complaint in the District Court for the Central District of California against the Foundation, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332. ER-219. Appellees First Amended Complaint, filed on August 9, 2024, alleged each Appellee received the

Foundation's Email, and that the Email violated California's Anti-Spam Email Act, California Business and Professions Code § 17529.5(a)(3) ("Section 17529.5"). ER-204, 208-209, 213. That provision prohibits advertising in a commercial email that "has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." Cal. Bus. & Prof. Code § 17529.5(a)(3).

On October 22, 2024, the Foundation filed a Motion to Dismiss the FAC pursuant to California Code of Civil Procedure § 425.16, California's anti-SLAPP statute (the "anti-SLAPP Motion"), supported by a declaration from Orlando Ibarra, California Outreach Director for the Foundation, who sent the Emails to Appellees on April 25, 2024. ER-166, 198-200. That same day, the Foundation also filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ER-155. On November 14, 2024, Appellees filed a Response in Opposition to the Foundation's motions. ER-107, 126.

On November 27, 2024, the Foundation filed reply briefs supporting its motions. ER- 42, 74. Both briefs were accompanied by additional declarations from Ibarra, attaching copies of Appellees' responses to the Foundation's Email. ER-64-73, 97-106.

On January 30, 2025, the district court issued an order denying both Motions to Dismiss ("Order"). ER-4. The Court denied Appellant's anti-SLAPP Motion

because, in its view, Plaintiffs-Appellees alleged sufficient facts showing that the E-mail was a "commercial email advertisement" and that a reasonable trier of fact could find the subject line materially misleading. ER-8-14. The district court further denied Appellant's Motion to Dismiss under Rule 12(b) finding, in relevant part, that cases in the Central District of California were "persuasive to establish" that Plaintiff-Appellees allegations of Section 17529.5 statutory violations are injuries-in-fact sufficient to confer Article III standing.[2] ER-14-15. This appeal followed. ER-229.

## SUMMARY OF ARGUMENT

Plaintiffs/Appellees lacked Article III standing to bring their suit, and so the district court lacked jurisdiction to hear it. That fatal error disposes of this case and compels dismissal. But even if jurisdiction were present, the Foundation was entitled to dismissal under California's anti-SLAPP statute. Indeed, this case is a textbook example of the type of lawsuit that the anti-SLAPP statute was intended to weed out—where a party uses litigation to chill another party's speech with which it disa-grees—and cannot demonstrate a reasonable probability of success on its claims. The Foundation's Email was plainly not a commercial communication and, moreover, a person "acting reasonably under the circumstances" would not likely be

---

[2] The Northern District of California has reached the opposite conclusion.

misled and assume an email came from the Teamsters merely because that word, shorn of all context, appears in the subject line.

I. The district court erred in finding Appellees satisfied Article III standing. Appellees failed to allege any "economic injury-in-fact," a precondition to federal jurisdiction over alleged violations of state statutes regulating false or misleading commercial emails. *See Reid v. Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). Instead of applying the rule applicable to state commercial speech laws, the district court applied precedents interpreting federal privacy statutes—even though federal preemption bars California from enforcing similar provisions. 15 U.S.C. § 7707(b)(1). This Court should confirm the rule adopted by multiple lower courts and find that economic injuries-in-fact are required to establish standing for violations of Cal. Bus. & Prof. Code § 17529.5(a).

II. The district court also lacked jurisdiction because Appellees cannot meet the $75,000 amount in controversy required under 28 U.S.C. § 1332(a). Appellees concede that each plaintiff received only a single email, ER-204, 212-216, and so damages are capped at $1,000 per individual. *See* Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii). Even if attorneys' fees and expenses are included, these costs must be allocated across all members of the putative class and at least one named plaintiff must have $75,000 in controversy. This would require incurring an

inconceivable amount in litigation expenses given the putative class size, and a ratio between costs to damages of seventy-four to one.

**III.** The district court erred by denying the Foundation's anti-SLAPP Motion to Dismiss. As the district court correctly noted, the Email sent by the Foundation was squarely within its First Amendment right to free speech. Moreover, Appellees cannot meet their burden of showing a "reasonable probability" of success on the merits of their claimed violation of Cal. Bus. & Prof. Code § 17529.5(a)(3). The Email, which proposes no economic transaction, does not qualify as a "commercial e-mail advertisement" under Section 17529.5. Even if it did, no person "acting reasonably under the circumstances" would have been misled to believe an email with the subject line "Your Experience with Teamsters – Your Voice Matters" was sent by the Teamsters, especially where the "from" line and body of the email directly contradict that assumption.

## ARGUMENT

### I.  Appellees Lack Article III Standing

Subject matter jurisdiction, including infirmities in a party's Article III standing, may be raised "at any time." Fed. R. Civ. P. 12(h)(3); *Henderson ex rel. Henderson v. Shinseki*, 562 US 428, 434 (2011). Lack of subject matter jurisdiction is never waived and may be raised by either party or the court—even for the first time

on appeal. *Id.*; *see also Steel Co.*, 523 U.S. at 95; *Hendricks*, 408 F.3d at 1134-35; *Meredith*, 321 F.3d at 815-16.

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "First the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560-61. (internal punctuation and citations omitted).

Here, the core issue is the first element: whether Appellees suffered an "injury in fact." As noted, to establish injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (quoting *Lujan*, 504 U.S., at 560).

The district court's denial of the 12(b)(1) motion to dismiss and affirmation of Appellees' Article III standing is subject to *de novo* review. *E.g.*,

10

*Southcentral Found. v. Alaska Native Tribal Health Consortium*, 983 F.3d 411, 416–17 (9th Cir. 2020).

### A. The District Court Lacked Subject Matter Jurisdiction Because Appellees Failed to Allege a Concrete and Particularized Injury In Fact.

The district court mistakenly believed that a mere "violation of [each Appellee's] statutory rights… suffices to satisfy the concreteness requirement of Article III standing." ER-14, *quoting Silverstein v. Keynetics, Inc.*, 2018 WL 5795776, at \*9 (C.D. Cal. Nov. 5, 2018). Not so, for two reasons. First, the Supreme Court has explained that the mere violation of a statutory right does not generally convey standing. Second, while this Court has not determined the question in the specific context of Section 17529.5, it has reviewed closely analogous federal and California statutes and determined that an economic injury in fact is required to establish standing.

The default rule is clear: "under Article III, an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021). Put differently, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), *as revised* (May 24, 2016). As this Court has explained, it is not enough that "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Robins v. Spokeo Inc.*, 867 F.3d 1108, 1112-16 (9th Cir. 2017). Rather, the plaintiff must "suffer some harm that actually exists in the world." *Id.*

To be sure, "intangible harms can also be concrete." *TransUnion*, 594 U.S. at 425. But such "injuries" will generally have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* Neither the district court nor Appellees have shown how Section 17529.5 relates to a "traditionally recognized" cause of action. It does not involve "intangible injuries" like "restrictions on First Amendment freedoms or harm to one's reputation." *Robins v. Spokeo*, 867 F.3d at 1112. The statute cannot be analogized to common-law fraud, where justifiable reliance and damages are required. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). Nor does California classify these "commercial e-mail advertisements" as a nuisance. Instead, it merely calls them "annoying" and seeks to regulate only those aspects determined to be materially misleading. *See* Cal. Bus. & Prof. Code § 17529(b), (c), and (g).

Intangible injuries in the form of statutory violations may also suffice where a law (1) safeguards a "legally protected interest" and (2) the alleged violation harmed, or presents a material risk of harm, to that legally protected interest. *Robins v. Spokeo Inc.*, 867 F.3d 1108, 1112-1116 (9th Cir. 2017). But Appellees fare no better under that test. While this Court may not have addressed the injury in fact requirement for Section 17529.5 specifically, existing decisions are illustrative and support an economic injury in fact requirement.

Begin with the federal analogue—the CAN-SPAM Act[3]—which also "pro-
hibits such practices as transmitting messages with 'deceptive subject headings' or
'header information that is materially false or materially misleading.'" *Gordon v.
Virtumondo, Inc.,* 575 F.3d 1040, 1048 (9th Cir. 2009) (quoting 15 U.S.C.
§ 7704(a)(1), (2)). In that closely related context, albeit as a matter of statutory
standing, this Court has held that the mere receipt of a violative email does not
constitute a concrete adverse effect. *Id.* Similarly, when determining Article III
standing for alleged violations of analogous laws, other courts routinely require
an economic injury in fact and reject claims that merely receiving an allegedly
deceptive commercial spam email suffices. *See, e.g.*, *Stasi v. Inmediata Health Grp.
Corp.*, 501 F. Supp. 3d 898, 913 (S.D. Cal. 2020) (plaintiffs "allege they noticed
an increase in spam/phishing e-mails and/or calls, which is harm that is also
not necessarily 'economic' in nature"); *Baton v. Ledger SAS*, 740 F. Supp. 3d 847
(N.D. Cal. 2024) (citing *Stasi, supra*); *Jackson v. Loews Hotels Inc.* No. ED CV 18-
827-DMG (JCx), 2019 WL 6721637, *(C.D. Cal. July 24, 2019) (granting De-
fendant's Motion to Dismiss for lack of standing where plaintiff made no alle-
gations that she incurred a "financial injury as a result of the spam email"); *see
also Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847, 857 (S.D. Tex. 2015) (no

---

[3] Formally, the Controlling the Assault of Non-Solicited Pornography And
Marketing (CAN-SPAM) Act of 2003, 15 U.S.C. § 7701, *et seq.*

13

injury despite plaintiff receiving "target[ed]" physical, electronic, and telephonic "solicitations"); *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 609 (S.D.N.Y. 2009) ("The receipt of spam by itself, however, does not constitute a sufficient injury entitling [plaintiff] to compensable relief.").

Moreover, CAN-SPAM requires Section 17529.5 to be interpreted in line with *TransUnion*'s "traditional harm" test. 594 U.S. at 425. California's statute is limited by CAN-SPAM's express preemption of state laws regulating "commercial" emails unless those restrictions concern "fraud or deception" rising to the level of "traditionally tortious or wrongful conduct." 575 F.3d at 1061-62 (quoting *Omega World Travel, Inc. v. Mummagraphics, Inc.,* 469 F.3d 348, 354 (4th Cir. 2006)); 15 U.S.C. § 7707(b)(1) ("This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto."). In short, CAN-SPAM preempts all state commercial email laws except those involving "traditional tort theories." *Gordon,* 575 F.3d at 1063. Appellees have identified no "traditional" tort where a plaintiff would prevail based upon mere receipt of an email, without so much as intangible damages, like harm to one's reputation, otherwise required at common law. *TransUnion*, 594 U.S. at 425-26.

14

Indeed, the facts in *Gordon,* which were held preempted by the CAN-SPAM Act, are extraordinarily similar to those alleged here. Gordon argued that certain "fanciful domain names" in the return address field "fail[ed] to clearly identify . . . the emails' sender." 575 F.3d at 1063. He admitted, however, that he was not misled or deceived. The "From" line included nothing inherently deceptive, just as the Foundation's use of "Teamsters" was not inherently deceptive. As in *Gordon,* there is no allegation here that the Foundation's subject line "aimed at misleading recipients." *Id.* This Court held that Gordon's claims, which boiled down to a demand that the "From" line directly identify an email's sender, "f[ound] no basis in traditional tort theories." *Id.* Alleged "deficiencies [which] relate to, at most, non-deceptive statements or omissions and a heightened content or labeling requirement . . . falter under the weight of federal preemption." *Id* at 1064.

If Section 17529.5 does not require that a plaintiff plead damages in accordance with traditional tort theories, it is preempted by CAN-SPAM. Conversely, if Section 17529.5 does require establishing traditional harms, Appellees have failed to plead them. In either event, read in conjunction with CAN-SPAM, Appellees cannot state a claim over which this Court has jurisdiction.

Turning from federal to California statutes, this Court has held that an "*economic* injury-in-fact" is required to establish standing under three other statutes

15

involving false commercial speech: California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*.; False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq*.; and Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq. *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). In all three instances, California has buttressed its usual taxpayer standing rules and requires an economic injury in fact. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (holding that Proposition 64 added the federal standard of an "injury in fact" to California's UCL and FAL standing requirements, with both requiring "some form of economic injury"); *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1375 (2012) (noting that where a plaintiff alleged an "economic injury" under the UCL he has also adequately alleged injury under the CLRA); *see also* Cal. Bus. & Prof. Code §§ 17204, 17535, as amended by Prop. 64, as approved by voters, Gen. Elec. (Nov. 2, 20004) §§ 3, 5.

But this Court has explained that this state requirement "demands no more than the corresponding requirement under Article III of the U.S. Constitution." *Reid*, 780 F.3d at 958 (citing *Hinojos v. Kohl's Corp.,* 718 F.3d 1098, 1104 (9th Cir. 2013)); *see also TrafficSchool.com, Inc. v. Edriver, Inc.*, 653 F.3d 820, 825 (9th Cir. 2011) (plaintiff must allege "harm to plaintiff's business" to establish standing for "false advertising" claim under Lanham Act); *Beyond Systems, Inc. v. Kraft Foods, Inc.*, 972 F. Supp. 2d 748, 752, 766 (D. Md. 2013), *aff'd*, 777 F.3d 712 (4th Cir.

16

2015) (standing under Section 17529.5 and analogous Maryland statute not established by "mere receipt of the offending e-mails"). In other words, irrespective of California's legislative judgment, Article III standing requires an economic injury for those consumer protection statutes. The same rule should control here.

It is true that this Court has permitted plaintiffs to establish standing for mere receipt of a communication under certain federal privacy statutes. But that supports the point. Unlike Section 17529.5, those statutes protect recognized legal interests with acknowledged causes of action rooted in common law, such as invasion of privacy. Accordingly, they regulate *all* messages, not merely misleading ones. After all, an unwanted message intrudes upon privacy regardless of its contents.

Take the leading decision in *Van Patten v. Vertical Fitness Grp. LLC*, 847 F.3d 1037 (9th Cir. 2017). There, this Court evaluated the federal Telephone Consumer Protection Act ("TCPA") which, unlike Section 17529.5, is not directed at false or misleading communications, but instead applies to automated messages irrespective of their content. In doing so, this Court contrasted situations "where a violation of a procedural requirement . . . may not cause actual harm or present any material risk of harm" and cases where a "telemarketing text . . . present[s] the precise harm and infringe[s] the same privacy interests Congress sought to protect in enacting the" law. *Id.* at 1043.

In other words, *unlike with a commercial misrepresentation statute,* Congress's intention with the TCPA was to protect a general privacy interest. But, again because of federal preemption by CAN-SPAM, that interest is not available to California. It may only target "falsity or deception." 15 U.S.C. § 7707(b)(1).

Critically then, where this Court has permitted standing based upon the mere receipt of a message, it has found that Congress *both* (1) specified its intent to protect legal interests recognized at common law, such as preventing an "invasion of privacy, intrusion upon seclusion, [or] nuisance," and (2) the scope of the statutory regime was unrelated to regulating false or misleading commercial speech. Only then did this Court confirm that a plaintiff need only demonstrate a statutory violation and an analogous claim available at common law to satisfy the "concrete injury in fact" requirement for Article III standing. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1118 (9th Cir. 2022) (holding plaintiffs had standing where receipt of "unsolicited telemarketing phone calls" or "robocalls" in alleged violation of the TCPA closely resembled traditional claims for "invasion of privacy, intrusion upon seclusion, and nuisance" and thereby established a "concrete injury in fact").

In large part, because the CAN-SPAM Act preempts the field, Section 17529.5 is directed solely at misleading commercial emails. Accordingly, this Court should hold that, as with CAN-SPAM and related California consumer protection laws — and unlike federal privacy laws — plaintiffs alleging violations of Section

17529.5 must show a concrete, economic injury in fact to satisfy Article III standing, which Appellees have not done.[4]

## II. The District Court Lacked Subject Matter Jurisdiction Because Appellees Cannot Satisfy the $75,000 Amount-In-Controversy Requirement Under 28 U.S.C. § 1332(a)

Appellants invoked diversity jurisdiction under 28 U.S.C. § 1332(a), but they cannot meet the $75,000 amount-in-controversy threshold.

It is well settled that where a plaintiff brings a putative class action and invokes diversity jurisdiction (as opposed to jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)), the plaintiff may not aggregate damages to satisfy the amount in controversy requirement; plaintiff must demonstrate that at least one named class member has more than $75,000 at issue. *Gibson v. Chrysler Corp.*, 261 F.3d 927, 941-45 (9th Cir. 2001) (attorneys' fees and other recoverable damages are not aggregated across putative class members for

---

[4] This is also the rule, applying *Reid,* that has been adopted by multiple courts in the Northern District of California. *Blanchard v. Fluent LLC,* No. 17-04497, 2018 WL 4373099, at *2 (N.D. Cal. Sept. 13, 2018) (economic injury in fact required for Article III standing under Section 17259.5); *Greenberg v. Digital Media Solutions LLC*, No. 19-CV-00355-VC, 2019 WL 1986758, at *1 (N.D. Cal. May 1, 2019) (distinguishing TCPA claims and requiring economic injury in fact under Section 17259.5); *Soriano v. Lending Tree, LCC*, No. 17-07078, 2018 WL 2317945, at *2 (N.D. Cal. May 22, 2018) (mere receipt of allegedly misleading commercial spam email, without economic injury in fact, insufficient to establish standing for Section 17529.5). The district court correctly noted that several decisions in the Central District of California disagree. ER-14. But for the reasons given above, the Northern District has reached the correct conclusion, and its rule should be approved by this Court. *See, supra*, I.A.

19

determining the amount-in-controversy for jurisdictional purposes); *see also Kanter v. Warner-Lambert Co.*, 52 F. Supp. 2d 1126, 1132 (N.D. Cal. 1999), *aff'd*, 265 F.3d 853 (9th Cir. 2001) (refusing to attribute attorney's fees in class action solely to the named plaintiff to satisfy diversity jurisdiction requirement as violative of non-aggregation rule).[5]

Appellees cannot make the requisite showing. They allege the receipt of a single email, and the operative statute thus limits their recovery to $1,000. *See* Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii) ("Liquidated damages of $1,000 for each unsolicited commercial email advertisement transmitted in violation of this section . . . ."); ER-204-206 (alleging Appellees each received only one email from the Foundation and defining proposed class as individuals who received the same email). While attorneys' fees and other expenses may be considered in determining the amount in controversy, those expenses also cannot be solely attributed to the named plaintiffs and must be allocated across the entire putative class. *Gibson, supra,* 261 F.3d at 941. Appellees (perhaps for this very reason) do not allege the number of anticipated class members, instead simply alleging that there are more than forty. ER-206. But they do allege that there are over 14,000 members in the union that the Email targets, ER-203, and that the Email is a template that the Foundation "used to

---

[5] Appellees presumably did not invoke CAFA jurisdiction because they cannot meet the minimum $5,000,000 amount in controversy requirement where Cal. Bus. & Prof. Code § 17529.5 caps the recovery in this case at $1,000,000.

send thousands of emails to Plaintiffs and their co-workers" ER-204. If only 1,000 of these members received the Email and are part of the putative class, then Appellees would have to, inconceivably, incur approximately \$74,000,000[6] in legal expenses for a single class member to satisfy the \$75,000 amount in controversy requirement.[7] And regardless of the number of class members, subject matter jurisdiction turns on a ratio between expenses and damages of *seventy-four-to-one*, confirming the unreasonable—and therefore unrecoverable—nature of the requisite attorneys' fees to satisfy diversity jurisdiction. *See Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 991 (9th Cir. 2023) (rejecting under Fed. R. Civ. P. 23 as unreasonable any attorneys' fee award that is 30 times larger than the entire class award).

Even under the Ninth Circuit's lenient "legal certainty" test for establishing the amount-in-controversy where it has been pled generally by a plaintiff asserting diversity jurisdiction, *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 363-64 (9th Cir. 1986), the district court should have evaluated whether Appellees' generic claim of satisfying the amount-in-controversy, ER-202, was presented in good faith when Appellees: alleged that the subject Email was sent to members

---

[6] This assumes that each member of the class receives the maximum liquidated damages of \$1,000, which also equals the maximum recovery per incident under the statute of \$1,000,000.

[7] In fact, as Appellees allege, the Email was sent to several thousand members, making it literally impossible for a single class member to establish standing absent inconceivable 9-figure attorneys' fees.

of a union that has 14,000 members; alleged that the Email was a template that the Foundation used to send emails to Appellees and several thousand of their co-workers; prayed for the maximum individual statutory damages of $1,000; and are reliant upon potentially recoverable attorneys' fees and costs to meet the jurisdictional threshold, which must be evenly distributed throughout the entire putative class to reach the minimum amount of $75,000 required under 28 U.S.C. § 1332(a). *See Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015) (acknowledging that demonstrating a bad faith claim by a plaintiff as to the amount of damages, made merely to obtain federal court jurisdiction, is sufficient to defeat subject matter jurisdiction) (abrogated on other grounds by *Garnier v. O'Connor-Ratcliff,* --- F.4th ---, 2025 WL 1387929 (9th Cir., May 14, 2025)).

Accordingly, the district court lacked subject matter jurisdiction because neither Appellees nor any putative class member can satisfy the amount in controversy requirement. Even if this Court were to conclude that it cannot make that determination under the "legal certainty standard," this case should be remanded and the district court instructed to determine whether Appellees' amount-in-controversy representation was made in good faith and subject matter jurisdiction in fact exists under 28 U.S.C. § 1332(a).

III.     **The District Court Erred in Not Striking the Complaint under California's Anti-SLAPP Statute**

"To evaluate an anti-SLAPP motion, a court engages in a two-part inquiry. The defendant bears the initial burden to show that the statute applies because the lawsuit arises from the defendant's act in furtherance of its right of petition or free speech. If the defendant meets its burden, the burden shifts to plaintiff to demonstrate a probability of prevailing on the merits of each plaintiff's claims." *Doe v. Gangland Productions, Inc.*, 730 F.3d 946, 954 (9th Cir. 2013); *see Marijanovic v. Gray, York & Duffy*, 137 Cal. App. 4th 1262, 1270 (2006). "If the plaintiff cannot meet the minimal burden of 'stating and substantiating a legally sufficient claim,' the claim is stricken pursuant to the statute." *Jodan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1188-89 (9th Cir. 2017); *see Navellier v. Sletten*, 29 Cal. 4th 82 (2002).

While the district court rightly held that the Foundation satisfied its burden as to the first prong, it erred in holding Appellees showed a "probability of prevailing" on their claim, especially where, as a matter of law, the Email does not qualify as a "commercial e-mail advertisement" and no reasonable person would be misled by the Email under the circumstances.

The district court's denial of the anti-SLAPP motion is subject to *de novo* review. *E.g.*, *Jordan-Benel*, 859 F.3d at 1188; *Makaeff v. Trump University, LLC*, 715 F.3d 254, 261 (9th Cir. 2013).

### A. The Foundation Prevailed on the First Prong of the Anti-SLAPP Motion Standard.

The district court correctly held that when the Foundation sent the Email it was "engaged in conduct (1) in furtherance of the right of free speech, and (2) in connection with an issue of public interest." ER-8-10; *Gangland Productions, Inc.*, 730 F.3d at 954; *see* Cal. Civ. Proc. Code § 425.16(a), (e)(4). The Foundation does not appeal this determination, which was plainly correct. *See* ER-9 (explaining that Appellees have conceded the Email was sent in furtherance of the Foundation's political views); *see also, e.g., Thornhill v. Alabama,* 310 U.S. 88, 101-02 (1940) ("freedom of speech" includes "the liberty to discuss publicly and truthfully all matters of public concern" and "must embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period.").

### B. The District Court Erred in Holding Appellees Demonstrated a Probability of Prevailing on the Merits of Their Claim.

Under the second prong of the anti-SLAPP inquiry, the burden shifts to the plaintiff "to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Makaeff*, 715 F.3d at 261. "A plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.'" *Doe v. Gangland Productions, Inc.*, 730 F.3d 946,

957 (9th Cir. 2013) (quoting *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002)). "Under this standard, the claim should be dismissed if the plaintiff presents an insufficient legal basis for it, or if, on the basis of the facts shown by the plaintiff, 'no reasonable jury could find for the plaintiff.'" *Makaeff*, 715 F.3d at 261 (quoting *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001)).

Here, Appellees did not establish a reasonable probability they will prevail on their claim for two reasons: (1) the Foundation's Email does not qualify as a "commercial e-mail advertisement" subject to Section 17529.5, and (2) the Email's subject line is not, as a matter of law, misleading to a consumer "acting reasonably under the circumstances," as required under Section 17529.5.

## 1. California's Anti-Spam Email statute is limited to commercial emails, which the Foundation's email is not.

By its own terms, California's Anti-Spam Email statute is limited to "commercial email advertisements." Cal. Bus. & Prof. Code § 17529.5(a). It does not reach all unwanted or unsolicited emails. Even if plain statutory text were insufficient to establish this point, a contrary view would raise substantial constitutional objections.

Section 17529.5(a) is limited to those who "advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address" under certain enumerated circumstances. Cal. Bus. & Prof. Code § 17529.5(a). The statute defines a "commercial e-mail advertisement" as "any electronic mail

message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." *Id.* § 17529.1(c) (emphasis added).[8]

While the word "commercial" is not defined in the statute, the context of the definition provided for "commercial e-mail advertisement" clarifies the "commercial" nature of the statute's prohibition: the "purpose" of the e-mail advertisement must be the promotion of a *commercial* endeavor; to wit, the "lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." *See Coal. of Concerned Cmtys., Inc. v. City of Los Angeles*, 34 Cal. 4th 733, 737 (2004) (Courts "first examine the statutory language, giving it a plain and commonsense meaning."). These are tangible or intangible items of value, which are conventionally bought, sold, or leased in the commercial context.[9]

Buttressing this point, the dictionary definition of "commercial" which, in the absence of statutory definitions, the California Supreme Court finds instructive, *see People v. Farell*, 28 Cal. 4th 381, 387-88 (2002), states it to mean "occupied with or

---

[8] While no statutory definition for the terms "advertise" or "advertising" is provided, California's Supreme Court has held these terms to generally mean "the widespread distribution of promotional materials to the public at large." *Hameid v. Nat'l Fire Ins. Of Hartford*, 31 Cal. 4th 16, 23-30 (2003).

[9] The fact the California legislature codified Section 17529.5 in the Business & Professions Code portion of the statutory codes, next to the consumer protection provisions for California's Unfair Competition Law, is telling: the intent and focus is to limit *commercial* email advertisements, sent by those engaged in commerce, not all unwanted emails.

engaged in commerce," and "commerce" means "the exchange or buying and selling of commodities esp. on a large scale." Webster's 3d New Int'l. Dictionary (2002) p. 456; *see also* The Oxford English Reference Dictionary (2d ed. 1996) p. 290 ("commerce" as "financial transactions, esp. the buying and selling of merchandise, on a large scale"); Black's Law Dictionary (10th ed. 2014) p. 325 ("commercial" as "[o]f, relating to, or involving the buying and selling of goods; mercantile"). By definition then, "commercial" e-mail advertisements do not include emails concerning *non-commercial* subjects untethered to the purchase, sale, or lease of "property, goods, services, or extensions of credit."

Because Section 17529.5 reaches only emails that propose commercial transactions, it cannot reach the Foundation's Email, which is not commercial at all.

California's Supreme Court has adopted a limited-purpose test to determine "whether particular speech" in the context of "laws aimed at preventing false advertising or other forms of commercial deception" is "commercial or noncommercial speech." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 960-62 (2002). That inquiry "requires consideration of three elements: the speaker, the intended audience, and the content of the message." *Id*. at 960.

"In typical commercial speech cases, the *speaker* is likely to be someone engaged in commerce—that is, generally, the production, distribution, or sale of goods and services—or someone acting on behalf of a person so engaged, and the *intended*

*audience* is likely to be actual or potential buyers or customers, or persons (such as reporters or reviewers) likely to repeat the message to or otherwise influence actual or potential buyers or customers." *Id.* Moreover, the "advertising format and economic motivation" also inform the *content* of the speech, with "[e]conomic motivation . . . impl[ying] that the speech is intended to lead to commercial transactions . . . ." *Id.* The "factual content of the message" is also relevant because it typically "consists of representations of fact about the business operations, products, or services of the speaker (or the individual or company that the speaker represents), made for the purpose of promoting sales of, or other commercial transactions in, the speaker's products or services." *Id.* at 960-61; *see also id.* at 955 ("[G]overnmental authority to regulate commercial transactions to prevent commercial harms justifies a power to regulate speech that is 'linked inextricably to those transactions.'") (quoting *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 499 (1996) (plur. Opn. of Stevens, J.)).

Here, the three elements for commercial speech are clearly missing from the Foundation's Email, rendering it non-commercial speech outside the scope of Section 17529.5 and its definition of "commercial e-mail advertisement." *See Rosolowski v. Guthy-Renker LLC*, 230 Cal. App. 4th 1403, 1411 (2014) ("Section 17529.5 prohibits certain deceptive practices in *commercial* e-mail . . . .") (emphasis added). First, the Foundation—as the speaker—is not "engaged in commerce." *See Kasky*, 27 Cal. 4th at 960. The Foundation does not engage in "the production, distribution, or sale of

28

goods or services" and has no pecuniary or financial interest in any contemplated commercial transaction resulting from its Email. ER-199-200. *See also*, *SEIU Healthcare 775NW v. State of Washington Department of Social and Health Services*, 193 Wash. App. 377, 406 (2016) (wherein court held that the Foundation does not engage in "commercial" activity because "[n]otifying individuals of their constitutional rights does not directly involve the generation of revenue or financial benefit. As the trial court noted, this purpose appears to be political rather than commercial."). Rather, like a voter registration nonprofit reaching out to potential voters to remind them to exercise the right to vote, or a religious organization reaching out to potential congregants to join them in exercising the right to worship, the Foundation is reaching out to inform public employees about their constitutional rights. None of these scenarios concern a "commercial transaction."

Second, the public sector employees—the audience—are not "actual or potential buyers or customers" because, while public sector employees may be interested in the information provided by the Foundation, the information (including the opt-out letters available on the www.optouttoday.com website) is free, ER-199-200, eliminating the requisite "buyer or customer" component. *See Kasky*, 27 Cal. 4th at 960. ("The high court has frequently spoken of commercial speech as speech proposing a commercial transaction, thus implying that commercial speech typically is communication between persons who engage in such transactions."); *Rice v. Fox Broad.*

*Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003) (commercial speech is "for the purpose of influencing consumers to *buy* defendant's goods or services.") (overruled on other grounds by *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020)) (emphasis added).

Third, the content of the Foundation's Email confirms it is not commercial speech because (i) it is not an advertisement for a product or service, (ii) there is no economic or financial motivation, and (iii) the factual representations in the email do not contemplate any sort of commercial transaction. As the record makes clear, the Foundation offers *free* information and forms to public sector employees, with no *quid pro quo* requirement and without any pecuniary interest. ER-199-200. If public sector employees elect to exercise their right to opt out of union membership, it costs them nothing and the Foundation charges nothing. ER-200. Just as assisting a voter to register to vote at no charge is not a commercial transaction, so too assisting a public sector employee to opt out of their union membership at no charge is not a commercial transaction, and an email inquiring about a public sector employee's experience in a union is not a commercial email advertisement.

This conclusion is also compelled by the United States Constitution. Because Section 17529.5 seeks, on its face, to regulate speech, it is constitutionally constrained by the First Amendment. In that context, the distinction between commercial and non-commercial speech is of foundational importance. *See Kasky v. Nike, Inc.*,

27 Cal. 4th 939 (2002) (analyzing commercial and non-commercial speech under First Amendment and California Constitution); *see also Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 64-5 (1983). "Commercial" speech is a defined category that "at its core [is] speech proposing a commercial transaction." *Kasky*, 27 Cal. 4th at 956 (quoting *Central Hudson Gas & Elec. v. Public Serv. Comm'n*, 447 U.S. 557, 562 (1980)).

While non-commercial speech is subject to strict-scrutiny, commercial speech is subject to intermediate-scrutiny. *See United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803, 813 (2000) (content-based regulation of noncommercial speech is entitled to full First Amendment protection and must withstand strict scrutiny); *Central Hudson Gas & Elec. v. Public Serv. Comm'n*, 447 U.S. 557, 566 (1980) (giving test for First Amendment protection of commercial speech). If Section 17529.5 is interpreted to reach speech that does not "propos[e] a commercial transaction," it likely triggers heightened First Amendment scrutiny. Rather than invite that constitutional issue, principles of constitutional avoidance require that Section 17529.5 be interpreted to reach only commercial communications. *See Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of

Congress."); *see also Prison Legal News v. Ryan*, 39 F.4th 1121, 1131 (9th Cir. 2022) (canon of constitutional avoidance only comes into effect where statute is susceptible to more than one construction).

The district court's disregard for the commercial versus non-commercial speech distinction, and rejection of the limiting nature of the term "commercial" as a modifier for "e-mail advertisement" in Section 17529.5, *see* ER-11, erroneously expanded the scope of Section 17529.5 to encompass *any* email tangentially associated with any "service," even where the "service" is free and not part of any commercial transaction. Where, as here, the only "service" provided is the free conveyance of non-commercial information, such an interpretation is contrary to the plain text of California's statute and the dictates of the First Amendment. It turns the statute into a *non-commercial* speech regulation.

This Court should reject the district court's expansive interpretation of Section 17529.5. An email from the Foundation, a nonprofit entity, surveying public sector employees about their experience as union members and offering, at no cost, to assist in resigning their union membership does not propose a commercial transaction and thus, does not qualify as a "commercial e-mail advertisement" under Section 17529.5. This conclusion is fatal to Appellees' effort to establish a "reasonable probability" of prevailing on their claim. Accordingly, the Foundation is entitled to

prevail on its anti-SLAPP motion, and the district court's ruling to the contrary should be reversed.

### 2. No reasonable consumer could find the Foundation's April 25, 2024 email misleading.

Even assuming, *arguendo,* that the Foundation's Email qualifies as a "commercial email advertisement," Appellees' claims should still be stricken under California's anti-SLAPP statute because, as a matter of law, Appellees cannot establish a "reasonable probability" they will prevail on their anti-SPAM claim that the Foundation's Email's subject line is likely misleading "about a material fact regarding the contents or subject matter of the message" to a consumer "acting reasonably under the circumstances." Cal. Bus. & Prof. Code § 17529.5(a)(3).

In its entirety, the subject line of the Email reads: "Your Experience with Teamsters – Your Voice Matters." ER-213-215. Appellees' theory of liability is that the Email is "misrepresentative" because "the subject line appeared on its face to be endorsed or solicited by the Teamsters." ER-209. That's it. But no consumer "acting reasonably under the circumstances" would be "likely" to come to that conclusion. Cal. Bus. & Prof. Code § 17529.5(a)(3). The district court's decision to the contrary is mistaken for three reasons.

First, the district court erred in refusing to read the Email's subject line in the context of the rest of the Email, as required by both the plain statutory language and

the most recent California Appellate Court decision applying that statute, *Roslowski v. Guthy-Renker LLC*, 230 Cal. App. 4th 1403, 1416–17 (2014).

Although California's appellate courts have issued only two published opinions specifically interpreting Section 17295.5(a)(3), the most recent opinion, *Rosolowski v. Guthy-Renker LLC*, adopted a "commonsense reading" of the statute requiring the subject line of a commercial e-mail advertisement to be viewed in the context of the entire email. 230 Cal. App. 4th at 1418 ("Unlike *Hypertouch*, we view an e-mail's subject line in conjunction with the body of the e-mail, rather than in isolation."); *see also Wagner v. Spire Vision LLC*, 2015 WL 876514 (N.D. Cal. Feb. 27, 2015) (noting *Rosolowski* is one of only two California Appellate Court decisions to address Section 17295.5(a)(3)). Applying *Rosolowski*, the Email's subject line cannot be misleading as a matter of law because, in the context of the body of the email (as well as the "from" line), no reasonable consumer would believe the Email was either authored or endorsed by the Teamsters or an affiliate.

The holding in *Rosolowski* stems from the statute's requirement that the misleading nature of a commercial email advertisement's subject line be evaluated in the context of a consumer "acting reasonably under the circumstances." 230 Cal. App. 4th at 1417. *Rosolowski* also harmonized Section 17529.5(a)(3) and Section 17529.5(a)(2), where allegedly misleading information in an email's "from" line is also required to be read in the context of the body of the email. *Id.* at 1416.

Moreover, the *Rosolowski* Court expressly declined to follow the only other California Appellate Court ruling interpreting and applying Section 17529.5(a)(3), *Hypertouch Inc. v. ValueClick Inc.*, 192 Cal. App. 4th 805, 838 (2011), which was issued by the same appellate district (Second District) just three years prior. *Rosolowski*, 230 Cal. App. 4th at 1418 ("Unlike *Hypertouch*, we view an e-mail's subject line in conjunction with the body of the e-mail, rather than in isolation.").

The district court disregarded *Rosolowski* and instead relied on a strained reading of *Hypertouch* and an unpublished opinion which predates both *Rosolowki* and *Hypertouch*: *Asis Internet Servs. v. Subscriberbase Inc.*, 2010 WL 1267763, at *5 (N.D. Cal. Apr. 1, 2010). The result was a new theory whereby a consumer need look no further than the four corners of the subject line and, if "the subject line *might* . . . lead a reasonable person to expect something materially different than the message's actual content or subject matter," the "commercial e-mail advertisement" is materially misleading under Section 17529.5(a)(3). ER-12-13 (emphasis added). This conflicts with the plain language of that very section—which requires that the subject line be "*likely* to mislead"—and both *Rosolowski* and *Hypertouch*.

*Hypertouch* did not limit Section 17529.5(a)(3)'s misleading determination to the four corners of the subject line; it still required a comparison between the affirmative representations of the subject line and the body of the email. 192 Cal. App. 4th at 837-38. Indeed, the only way to determine whether an email subject line is *likely*

35

*to mislead* a reasonable recipient concerning the email's contents is by comparing it to the text of the email. To that end, the *Hypertouch* Court held Section 17529.5(a)(3) is violated where an e-mail's subject line creates an impression contradicted by the body of the e-mail, such as representing in the subject line that the recipient will get a free gift but then stating additional requirements in the body of the email. 192 Cal. App. 4th at 838-40. In other words, the subject line would need to be viewed in the *context* of the rest of the email to determine whether it affirmatively promised something that the body of the email withdrew or made subject to additional conditions. *Id.*

Even under *Hypertouch*, therefore, which has been rejected and updated by *Rosolowski*, the Foundation's Email is not materially misleading because the subject line—"Your Experience with Teamsters – Your Voice Matters"—is not contradicted by the body of the Email, which both (i) inquiries about the recipient's experience with the Teamsters and (ii) provides information on how and why the recipients' opinion matters. ER-213. The subject line of the Email does not promise one thing and then renege on that promise.

Moreover, the district court further erred by misreading *Rosolowski*, suggesting—wrongly—that the *Rosolowski* Court inferred a "cure" provision into Section 17529.5(a)(3), allowing the body of a commercial email advertisement to "cure" an otherwise misleading subject line. ER-13. But that was not the holding of

36

*Rosolowski* (nor is it a tenable interpretation, as whether a subject line is misleading can only be answered upon reading it in context with the text of the email). Rather, *Rosolowski*, consistent with the plain language of Section 17529.5(a)(3), requires the question of whether a subject line is misleading as to a material fact be answered by viewing it in the context of, or, using the language of Section 17529.5(a)(3), analyzing it "under the circumstances" of, the body of the email. If the body of the email contradicts an affirmative representation made in the subject line, it does not fail to "cure" it, but rather, confirms that it is materially misleading. Conversely, where there is no conflict between a subject line's express affirmative representation and the body of the email, the subject line cannot, as a matter of law, be materially misleading. 230 Cal. App. 4th at 1418.

This Court should adopt *Rosolowksi*'s "commonsense" approach and hold that Section 17529.5(a)(3) requires a reviewing court to consider a subject line in the context of the entire email.[10]

---

[10] To the extent the district court refused to determine as a matter of law that the subject line is materially misleading by reserving it to a trier of fact, ER-13, the district court erred because courts routinely decide as a matter of law whether an alleged statement is materially misleading to a reasonable consumer. *See, e.g.*, *Rosolowski*, 230 Cal. App. 4th at 1417; *Hypertouch, Inc.*, 192 Cal. App. 4th at 837-38; *see also Bontrager v. Showmark Media LLC*, 2014 WL 12600201 (C.D. Cal. June 20, 2014); *Tagged, Inc. v. Doe 1 through 10*, 2010 WL 370331, at *7 (N.D. Cal. Jan. 25, 2010) (court decided as a matter of law question of alleged violation of Section 17529.5).

The district court's second error is more fundamental. Rather than implying Teamsters authorship, the Email's subject line—all seven words of it—makes no statement as to authorship or endorsement whatsoever.  It does not say that the Email is *from* the Teamsters, *endorsed* by the Teamsters, or *from* or *endorsed* by a Teamsters' *affiliate*.  Rather, the subject line simply states: "Your Experience with Teamsters – Your Voice Matters."  ER-213.  In short, the Email's subject line does not and cannot be viewed as affirmatively representing any aspect of authorship or endorsement.

To hold otherwise, would imbue the presence of a proper noun—"Teamsters"—with automatic authorship, and require that any subject line either be devoid of proper nouns or include affirmative, clarifying statements of authorship to avoid running afoul of Section 17529.5(a)(3).  That reading is preempted by the CAN-SPAM Act and would be rejected by the California Supreme Court.  *See Gordon*, 575 F.3d at 1062 ("'a State law requiring some or all commercial e-mail carry specific types of labels, or to follow a certain format or contain specified content, would be preempted'") (quoting S. Rep. No. 108-102, at 21); *Kleffman*, 49 Cal. 4th at 346 (rejecting an interpretation of a related California Anti-Spam provision, Section 17529.5(a)(2), that would require inclusion of certain identifying information in a commercial email's header because such an interpretation would render California's Anti-Spam Email statute preempted by the CAN-SPAM Act).

Finally, despite the absence of any statement as to authorship or endorsement in the subject line, the district court made the inferential leap that a reasonable consumer *may* see the term "Teamsters" in the subject line and assume—incorrectly— that the Email was sent by the Teamsters, or a Teamsters' affiliated group. ER-13. But that is not the standard. The question is whether the sender "knows [the Email] would be *likely to mislead* a recipient, acting reasonably under the circumstances." Cal. Bus. & Prof. Code § 17259.5(a)(3) (emphasis added). The district court's inference, then, is in error, and contrary to Section 17259.5(a)(3)'s requirement that courts look to the full context of an email, which should also include the "from" line. Cal. Bus. & Prof. Code § 17259.5(a)(3); *see Rosolowski*, 230 Cal. App. 4th at 1417 ("[W]e view an e-mail's subject line in conjunction with the body of the e-mail, rather than in isolation.").[11]

The "from" line, which contains the author's email address and literally appears next to the subject line when viewed by a consumer, identifies the author of the Email as orlando@optouttoday.com. No reasonable consumer would be *likely* to view the "OptOutToday.com" domain name—a name clearly indicating an

---

[11] Where, as here, the California Supreme Court has yet to interpret Section 17529.5(a)(3), California's appellate courts and rules of statutory construction are instructive. *See Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003) ("In the absence of a controlling California Supreme Court decision, we must predict how the California Supreme Court would decide the issue, using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids.") (citations omitted).

organization focused on "opting out" of union membership—as Teamsters branding. And no consumer "acting reasonably under the circumstances" would be *likely* to ignore the "from" line when making reasonable inferences about the identity of the email's *sender*.

Based on the district court's interpretation of Section 17529.5(a)(3), not only would every subject line of every commercial e-mail advertisement need to include an affirmative statement as to authorship or endorsement,[12] but the actual presence of sender/authorship information in the "from" line (or the body of the email) would be irrelevant because consumers "acting reasonably under the circumstances" could simply draw any inference they chose as to authorship despite the presence of a clarifying email address and domain name.  Under this rationale, it would not matter if the "from" line listed the sender as "orlando@DefinitelyNotAssociatedWithThe-Teamsters.com." Such a result ignores the "commonsense reading" of Section 17529.5(a)(3) required by California courts.  *E.g.*, *Rosolowski*, 230 Cal. App. 4th at 1417 ("Again, giving section 17529.5(a)(3) a commonsense reading, we conclude, as did the trial court, that the subject lines were not likely to mislead a recipient,

---

[12] This is, in fact, essentially what the district court required. ER-13 (accepting Appellee's position "that the subject line in its entirety is likely to mislead because there is 'no indication that the Email was sent from an outside organization instead of the Teamsters.'").

acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.").

Similarly, the body of the Email readily confirms that the Email is not from the Teamsters or a Teamsters' affiliate. Here, if a consumer had any question about whether the Teamsters authored or endorsed the Email, the body of the Email dispels all doubts in its second sentence: "The reason why I am reaching out is because several former Teamsters 1932 members have reached out to us asking for help to stop paying dues in to what they say is a union that does not really represent them." ER-213. The rest of the body of the Email further confirms the Teamsters neither authored nor endorsed it, by affirmatively identifying the author as OptOut-Today.com and describing the recipient's constitutional right to leave a union. *See, e.g.*, ER-213 ("We here at OptOutToday.com are dedicated to informing and empowering those that are disenfranchised by their union.").

Nothing in the Email text is inconsistent with the subject line and sender. Where the identity of the sender is readily ascertainable from the body of the email or "from" line, there is nothing in the header that is falsified, misrepresented, or forged. *See Kleffman v. Vonage Holdings Corp.*, 551 F.3d 847, 849 (9th Cir. 2008). In fact, under California law, "a header line does not misrepresent the identity of the sender merely because it does not identify the official name of the entity which sent the e-mail." *Rosolowski*, 230 Cal. App. 4th at 1416.

41

The district court's opinion denying the Foundation's anti-SLAPP motion ignored California law requiring it to view the subject line in context, ignored the fact that the subject line makes no claim of authorship, ignored the clear statement of authorship in the "from" line and the Email's body, and identified no tension between the subject line and the Email's text, much less a representation concerning a material fact. This cannot be what the California Legislature intended when it prohibited subject lines "*likely* to mislead a recipient, acting reasonably under the circumstances."

Accordingly, the Foundation was entitled to dismissal under California's anti-SLAPP statute because Appellees cannot "establish a reasonable probability that it will prevail on its claim." *Makaeff,* 715 F.3d at 261 (9th Cir. 2013).

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's order below.

Dated: July 14, 2025

Respectfully submitted,

*/s/ Phillip J. Eskenazi*

Phillip J. Eskenazi
Alex E. Spjute
BAKER & HOSTETLER LLP
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067-4301
(310) 820-8800
peskenazi@bakerlaw.com

*Counsel for Appellant*
EVERGREEN FREEDOM
FOUNDATION

42

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** _25-1323_____

I am the attorney or self-represented party.

**This brief contains 10650 words,** including __0_____ words manually

counted in any visual images, and excluding the items exempted by FRAP 32(f).

The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** __/s/ Phillip J. Eskenazi_____ **Date** __7/14/2025_____
*(use "s/[typed name]" to sign electronically-filed documents)*

43

## **CERTIFICATE OF SERVICE**

I certify that on July 14, 2025, I caused the foregoing brief to be filed with the Court electronically using the CM/ECF system, which will send a notification to all counsel of record.

Dated: July 14, 2025

*/s/ Phillip J. Eskenazi*
Phillip J. Eskenazi